**MCGUIREWOODS LLP**
ALEXANDER J. GERSHEN SBN #291929
Two Embarcadero Center
Suite 1300
San Francisco, CA 94111-3821
Telephone: 415.844.9944
Facsimile: 415.844.9922

Attorneys for Global Plasma Solutions, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Global Plasma Solutions, Inc.,<br><br>Plaintiff,<br><br>vs.<br><br>IEE Indoor Environmental Engineering,<br><br>Defendant. | CASE NO.<br><br>**COMPLAINT FOR:**<br>**(1) PRODUCT DISPARAGEMENT (15 U.S.C. § 1125(a))**<br>**(2) TRADE LIBEL**<br>**(3) LIBEL (Cal. Civ. Code § 45 et seq.)**<br>**(4) SLANDER (Cal. Civ. Code § 46 et seq.)**<br>**(5) VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200 (Cal. Bus. & Profs. Code § 17200 et seq.)**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Global Plasma Solutions, Inc. ("GPS"), through its undersigned attorneys, brings this Complaint against Defendant IEE Indoor Environmental Engineering ("IEE") and alleges as follows:

## INTRODUCTION

1. Plaintiff GPS is an innovative company focused on providing consumers with safe and effective air purification products.

2. As the inventor and owner of the revolutionary Needlepoint Bipolar Ionization (NPBI™) air purification technology, GPS has worked assiduously since 2008 to build its well-

-1-
COMPLAINT

earned reputation for excellence and develop trust among consumers in the United States and abroad. Recognizing GPS's contributions to the field, the United States Patent and Trademark Office has issued numerous patents to GPS for its advances in air purification systems and services, including the technology underlying GPS's NPBI™.

3. On or around November 5, 2020, without warning, Defendant IEE embarked on a mission to defame, disparage, and irreparably ruin the reputation of GPS and GPS's products for, upon information and belief, IEE's own financial gain.

4. Specifically, as outlined more fully below, IEE advertises itself to the consuming public as well as the air purification industry as "a building science consulting firm with 35 years of experience diagnosing building air quality problems and designing healthy and energy efficient indoor environments," that provides customers with a variety of diagnostic, consulting, and similar services designed to promote air quality in the consumers' desired space from IEE's offices in San Francisco, California.

5. As part of its public advertisement and promotion of its services and alleged expertise in the air quality industry, IEE recently authored and widely disseminated on November 5, 2020, a piece titled *Beware: The COVID-19 Snake Oil Salesmen Are Here* (the "Defamatory Piece"), a true and correct copy of which is attached hereto as **Exhibit A**.

6. The Defamatory Piece opens with the alarmist statements to the public and industry that they should "[b]eware" because "[t]he snake oil salesman are here and they are out to sell you air cleaners that promise to eliminate the SARS-CoV-2 airborne virus that causes COVID-19" when, as IEE claims, "at best these air cleaners provide little to no removal of airborne virus and may actually produce dangerous chemicals, such as ozone and formaldehyde."

7. The Defamatory Piece then includes approximately 7 pages of false, misleading, defamatory, and disparaging statements about GPS and GPS's products, identifying them expressly by name and indicating, among other things, that GPS is untrustworthy and willing to lie, and that GPS's products do not just fail to better air quality but actually worsen it by releasing ozone and formaldehyde.

8. In tandem with these statements, IEE includes a prominent link at the beginning of

the Defamatory Piece for the public or anyone else viewing the Defamatory Piece to easily access IEE's webpages at which IEE promotes and sells its air purification/ air quality services.

9. In other words, in the same breath that IEE intentionally disparages and defames GPS and GPS's products in order to discredit it both to the public and within the industry, IEE holds itself out as the company that should take GPS's place in satisfying the public's and industry's air purification/air quality needs moving forward.

10. Upon learning of IEE's actions, GPS contacted IEE to request that it remove and publicly rescind the Defamatory Piece, but IEE ignored those communications.

11. GPS therefore brings this case to protect itself from IEE's unlawful actions and to obtain relief for the harm IEE has caused to GPS and its business as a result of IEE's disparagement and defamation of GPS and GPS's products.

**THE PARTIES**

12. Plaintiff Global Plasma Solutions, Inc. is a corporation organized under the laws of Delaware with a principal place of business located at 3101 Yorkmont Road, Suite 400, Charlotte, NC 28208.

13. Upon information and belief, Defendant IEE is a sole proprietorship owned by Francis "Bud" Offermann, that is organized and existing under the laws of the State of California and has a place of business and its San Francisco office at 1448 Pine Street, Suite 103, San Francisco, CA 94109. A true and correct copy of IEE's website identifying its place of business within this judicial forum is attached hereto as **Exhibit B**.

**JURISDICTION AND VENUE**

14. This is a civil action for product disparagement under the Lanham Act as well as trade libel, slander, and libel under California law.

15. This Court has original subject matter jurisdiction over this lawsuit under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction over GPS's state law claims under 28 U.S.C. § 1367(a) because they are so related to the claims in this action over which this Court has original jurisdiction that they form part of the same case or controversy.

16. This Court also has diversity jurisdiction over this lawsuit under 28 U.S.C. § 1332

because the matter in controversy exceeds $75,000, exclusive of interests and costs, and is between citizens of different states.

17. This Court has personal jurisdiction over Defendant IEE because IEE maintains a place of business and transacts business within the State of California. *See* Ex. B. This Court also has personal jurisdiction over IEE because IEE committed a tortious injury in the State of California while regularly doing and/or soliciting business, or engaging in other persistent courses of conduct or deriving substantial revenue from goods or services used or consumers, within the State of California.

18. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) and (b)(2) because a substantial part of the events giving rise to the claims asserted in this Complaint occurred within this judicial district and because IEE is a resident in this judicial forum.

**FACTUAL BACKGROUND**

**A.    GPS and GPS's Products**

19. As noted above, GPS is well-known in the air purification/quality industry for providing customers and potential customers with accurate recommendations and products that meet each individual customer's air quality and purification needs.

20. GPS's products are based on its revolutionary Needlepoint Bipolar Ionization technology, commonly referred to using the NPBI™ mark.

21. GPS's NPBI™ is a patented technology that cleans the air by introducing ions in the space via the airflow in the ventilation system while not introducing harmful by-products, improving the air by reducing airborne particulate, odors, and pathogens.

22. Understanding that its reputation and credibility, as well as the public's faith in that credibility, is paramount in the industry, GPS takes very seriously its role in providing the consuming public and industry members with accurate, substantiated information about its products and services.

23. As a result, GPS invests heavily in before-marketing testing and research on its products.

24. GPS seeks out and obtains industry approvals from independent certifying agencies

such as UL, CE, RTCA, OSHPD, CARB, and other standard- setting bodies.

25. Consistent with GPS's commitment to transparency with its customers and potential customers, GPS prominently displays the result of tests by independent labs of its NPBI™ technology on its website. *See* **Exhibit C** (containing a true and correct copy of the independent testing section of GPS's website). GPS also works directly with customers—prior to any purchase—to conduct customer-specific studies that assess the performance and appropriateness of GPS's products for customer-specific needs.

26. As a result of these efforts, along with the time and resources GPS invests in its products and GPS's consistent dedication to excellence, GPS has earned a reputation as a leader in the air quality/purification industry.

27. In fact, approximately 250,000 GPS's NPBI™ air purification systems have been installed worldwide, including in government buildings, hospitals, corporate facilities, universities, and in hundreds of primary and secondary schools. GPS's technology is also trusted by some of the world's leading names in aviation.

28. GPS is a prominent member in good standing of The American Society of Heating, Refrigerating, and Air-Conditioning Engineers (ASHRAE), and GPS's employees regularly lecture and speak at ASHRAE meetings.

29. GPS also has an active membership with the American Society for Health Care Engineering (ASHE), and its aviation products have passed the stringent RTCA DO-160 tests.

30. GPS's products are routinely evaluated by leading experts, including those within the Environment, Health and Safety (EHS) departments representing major institutions, such as those identified in Paragraph 27 above.

31. GPS's reputation for excellence and dedication to offering of safe, high-quality products is embodied within its GLOBAL PLASMA SOLUTIONS logo, the GPS name, and its NPBI™ brand, all of which are readily associated with GPS and its products when encountered by the public and entities or individuals within the industry.

///

**B.     IEE's Disparaging and Defamatory Publications**

32. Despite the substantial resources and effort invested by GPS to build its reputation and to ensure that its products are safe and effective, IEE has embarked on a meritless campaign to damage GPS's reputation and goodwill by spreading defamatory and disparaging information about GPS and its products.

33. Upon information and belief, IEE has engaged, and is engaging, in this conduct in order to encourage the public and the industry to hire IEE to perform consulting services that, among other things, assess, design, and implement indoor air quality plans, a service that competes with GPS' products and services.

34. Specifically, on November 5, 2020, IEE disseminated the Defamatory Piece that is attached to this Complaint as Exhibit A.

35. The name of the Defamatory Piece alone—*Beware: The Covid-19 Snake Oil Salesman are Here*—sets the tone, giving the reader the impression that GPS is disreputable and untrustworthy, and that its products are shams.

36. This is exacerbated by the fact that under the title IEE includes an image it identifies as Morgan Weistling's painting of "The Snake Oil Salesman," which depicts powerful imagery of a deceitful traveling salesman taking advantage of the unsuspecting average man by selling wares that have no effect.

37. This negative impression is further exacerbated by the express reference to the COVID-19 pandemic, which at the time IEE disseminated this article was of increasing concern nationwide (and worldwide) as cases of the novel coronavirus were once again rapidly increasing.

38. With the audience so primed, IEE then includes a number of statements designed to increase its own credibility and trustworthiness, before launching into a lengthy, meritless attack on GPS and its NPBI™ air purification products, expressly identifying both by name and using images from GPS's website as well as GPS's logo in order to directly target GPS.

39. For example, IEE makes, among other claims, the following defamatory and disparaging statements about GPS and GPS's NPBI™ air purification products in the Defamatory

Piece:

- that GPS's products "provide little to no removal of airborne virus and may actually produce dangerous chemicals, such as ozone and formaldehyde;"

- that "[t]hese air cleaners are not new and have been reincarnated many times since the early 1990s" and that IEE "ha[s] never found that these devices significantly remove air contaminants from indoor air;"

- that one should not "expect these ionization devices to have a significant effect on airborne concentrations" because, "[w]hile ionization of air can increase deposition rates of particulates onto indoor surfaces, this effect is small compared to the overall removal by ventilation and filtration, and hence ionization does not significantly reduce indoor concentrations;"

- that GPS's product testing is improper, false, inaccurate, unreliable, or otherwise in error (without, among other things, acknowledging the stage of testing, additional testing performed, and/or the basis for conducting those tests), which IEE uses to mislead and make false statements about the appropriateness of those tests and/or the effectiveness rate of GPS's products;

- that products like GPS's "do not have test data showing they provide any significant removal of air contaminants;" and

- that GPS is a "snake oil salesman" and its products are the equivalent of "snake oil."

40. IEE's principal Francis J. Offermann has also appeared in a publicly available video claiming that GPS's devices "at best do nothing" and "perhaps, like, create things that you don't want to breathe, like formaldehyde."

41. All of these statements are false and/or misleading statements of fact about GPS and GPS's products that damage GPS's reputation.

42. In fact, as the examples noted above show, IEE ensures that the harm flowing to GPS from IEE's false and disparaging statements is significant: IEE does not content itself with just making false statements about the efficacy of GPS's products. Instead IEE goes so far as to explicitly say those products are actually unsafe and that GPS is knowingly peddling them anyways because the public is incapable of discovering that on its own and is particularly susceptible to this "fraud" due to spiraling concerns about the coronavirus pandemic.

43. Upon information and belief, IEE is making these false, misleading, defamatory and disparaging statements with actual knowledge that they are false, misleading, defamatory, and disparaging, and/or with reckless disregard for the same.

44. Alternatively, IEE has acted negligently in making these false, misleading, defamatory, and disparaging statements about GPS and GPS's products, as evidenced by—among other things—IEE's misapplication of cited standards, its reliance on cherry-picked studies without acknowledging why the studies were designed certain ways or what was tested, and the overwhelming but misleading suggestion that IEE's analysis is based upon its own peer-reviewed evaluation of GPS or GPS's products, when it is not.

45. A close reading is not required to see the motive behind IEE's disparaging and defamatory statements about GPS and GPS's products. A link to the Defamatory Piece is featured on the front page of IEE's website, and the Defamatory Piece includes a prominent link to IEE's webpages at which IEE competes with GPS to be the company that the public contacts for help with air purification/air quality concerns.

46. In other words, the more customers there are who are concerned with the safety and effectiveness of GPS's products or GPS's reputation for honesty and trustworthiness, the more customers there are that will turn to IEE instead of GPS to meet their needs or will abandon their existing relationship with GPS to pursue one with IEE.

47. IEE has ensured that these and other harms to GPS and its business have occurred and will continue to occur by publishing the Defamatory Piece en masse on at least its webpages hosted at iee-sf.com and refusing to remove those materials in response to GPS's request.

48. Upon information and belief, IEE has disseminated the Defamatory Piece in other ways and made additional disparaging and defamatory statements about GPS and GPS's products.

49. In fact, GPS's business has recently been greatly disrupted as its sales representatives have been receiving numerous inquiries from customers and other industry professionals about the statements and comments made in the Defamatory Piece, causing GPS to have to devote significant time and resources to dispelling the falsehoods IEE is spreading.

50. Upon information and belief, GPS has had existing and potential customers

ultimately decline to do business with GPS as a result of the Defamatory Piece.

51. GPS is also aware that its competitors are using the Defamatory Piece when contacting GPS's customers and potential customers in order to convince those customers to stop doing or pursuing business with GPS.

52. GPS has also learned that the Defamatory Piece has been picked up internationally, and that it is being referred to in industry presentations, resulting in additional, extensive damage to GPS and its business.

53. GPS is suffering irreparable harm from IEE's false, misleading, disparaging, and defamatory statements as well as substantial damage to GPS and its reputation. Upon information and belief, IEE's disparaging and defamatory statements have caused GPS tens of millions of dollars in damages.

## CAUSES OF ACTION

### COUNT I – FEDERAL FALSE ADVERTISING, PRODUCT DISPARAGEMENT, AND UNFAIR COMPETITION (15 U.S.C. § 1125(a))

54. GPS incorporates the preceding paragraphs of this Complaint by reference as if fully set forth here.

55. As described above, IEE has made false and misleading statements in commercial advertisements, presentations, and in promotional materials in violation of the Lanham Act, 15 U.S.C. § 1125.

56. These false and misleading statements were made in an effort to damage GPS's business and reputation and to promote and sell IEE's consulting services, which compete with GPS for customers in the air purification/quality industry.

57. IEE's statements are false and misleading descriptions of fact that have or are likely to cause confusion, mistake, or deception and misrepresent the nature, characteristics, qualities, efficacy, and safety of GPS's products as well as GPS's credibility and trustworthiness.

58. The statements made by IEE have or are likely to materially influence purchasing decisions at least in part because the public and air quality industry are led to incorrectly believe that GPS is disreputable and untrustworthy and that GPS's products are dangerous, ineffective,

and/or of inferior quality.

59. IEE knew or should have known that its commercial advertisements and promotional materials were false and/or misleading, or acted with intent to deceive or in reckless disregard of the truth of such statements.

60. IEE's false and misleading descriptions of fact have caused, and will continue to cause, the loss of goodwill and the loss of current and prospective customers who, but for IEE's actions, would begin or continue to do business with GPS.

**COUNT II – TRADE LIBEL**

61. GPS incorporates the preceding paragraphs of this Complaint by reference as if fully set forth here.

62. IEE has intentionally published statements to the public and members of the air quality industry directly and indirectly by, at a minimum, publishing statements to IEE's website.

63. Each of these statements disparaged the quality of GPS's products, including its NPBI™ air purification technology.

63. Each of these statements are unambiguously defamatory and were made in an unprivileged context.

64. Each of these statements were untrue.

65. Upon information and belief, IEE published these statements with actual malice. IEE knew or reasonably should have known that the statements in question were false. IEE is aware that omitting certain facts from its statements could leave a reader with a substantially false impression.

66. IEE knew or should have recognized that someone else might act in reliance on the statement, causing GPS financial loss.

67. GPS did suffer direct financial harm from these statements because customers and other industry professionals acted in reliance on the statements.

66. IEE's false statements directly and proximately injured GPS, and will continue to do so, including injury to its character, reputation within the industry, and the goodwill it has developed over many years as well as loss of earning capacity and loss of past and future income. IEE's false statements were a substantial factor in causing this harm.

-10-
COMPLAINT

**COUNT III - LIBEL (Cal. Civ. Code § 45 *et seq*.)**

67. GPS incorporates the preceding paragraphs of this Complaint by reference as if fully set forth here.

68. IEE has intentionally published statements to the public and members of the air quality industry directly and indirectly by, at a minimum, publishing statements to IEE's website.

69. Each of these statements are unambiguously defamatory and were made in an unprivileged context.

70. Each of these statements have a natural tendency to injure or cause damage to GPS as it exposed GPS to public hatred, ridicule and contempt.

71. The public and members of the air quality industry reasonably understood that the statements made were about GPS as IEE expressly refers to GPS and mentions GPS's products, including its NPBI™ air purification technology, by name.

72. These statements expressly or impliedly assert facts that are objectively verifiable, such as Defendants' misleading statements about the characteristics, efficacy, safety, source, and quality of GPS's products; that GPS is a "snake oil salesman" and its products "snake oil;" statements that suggest GPS is defrauding the public using invalid studies and unsubstantiated claims of product efficacy; and more.

73. These statements made by IEE are false.

74. Each of these statements communicate to the public and the air quality/purification industry that GPS's and its products are deceitful and frauds.

75. Upon information and belief, each of IEE's statements were motivated by IEE's desire to profit from those statements.

76. Upon information and belief, IEE published these statements with actual malice. IEE knew or reasonably should have known that the statements in question were false. IEE is aware that omitting certain facts from its statements could leave a reader with a substantially false impression. At the very least, IEE is negligent in determining whether its statements are true.

77. IEE's statements are defamation per se under Cal. Civ. Code § 45(a) because they accuse GPS of fraud.

78. IEE's statements are also defamatory per se because under Cal. Civ. Code § 45(a) because they tend to injure GPS in its occupation or discourage others from associating with them.

79. IEE's false statements are defamatory per se, entitling GPS to a presumption of damages. Additionally, IEE's false statements directly and proximately injured GPS, and will continue to do so, including injury to its character, reputation within the industry, and the goodwill it has developed over many years as well as loss of earning capacity and loss of past and future income. IEE's false statements were a substantial factor in causing GPS's harm.

**COUNT IV - SLANDER (Cal. Civ. Code § 46 *et seq*.)**

80. GPS incorporates the preceding paragraphs of this Complaint by reference as if fully set forth here.

81. IEE has intentionally made slanderous statements to the public and members of the air quality industry directly and indirectly by, at a minimum, making oral statements in publicly available videos about GPS and GPS's products, including but not limited to statements that GPS' devices "at best do nothing" and "perhaps, like, create things that you don't want to breathe, like formaldehyde."

82. Upon information and belief, IEE has made other slanderous statements to the public about GPS and GPS's products.

83. Each of these statements are unambiguously defamatory and were made in an unprivileged context.

84. The public reasonably understood that IEE's statements made were about GPS as IEE expressly refers to GPS and mentions GPS's products by name.

85. These statements expressly or impliedly assert facts that are objectively verifiable, such as Defendants' misleading statements about the characteristics, efficacy, safety, source, and quality of GPS's products. IEE further suggests that GPS is defrauding the public using invalid studies and unsubstantiated claims of product efficacy and more.

86. These statements made by IEE are false.

87. Each of these statements communicate to the public and the air quality/purification industry that GPS's and its products are deceitful and frauds.

88. Upon information and belief, each of IEE's statements were motivated by IEE's desire to profit from those statements.

89. Upon information and belief, IEE made these statements with actual malice. IEE knew or reasonably should have known that the statements in question were false. IEE is aware that omitting certain facts from its statements could leave a reader with a substantially false impression. At the very least, IEE is negligent in determining whether its statements are true.

90. IEE's statements are slander per se under Cal. Civ. Code § 46 because they accuse GPS of fraud.

91. IEE's statements are also defamatory per se under Cal. Civ. Code § 46 because they tend to directly injure GPS in respect to its trade or business, either by imputing to GPS general disqualification in those respects which the occupation peculiarly requires, or by imputing something with reference to GPS's trade or business that has a natural tendency to lessen its profits.

92. IEE's false statements are defamatory per se, entitling GPS to a presumption of damages. Additionally, IEE's false statements directly and proximately injured GPS, and will continue to do so, including injury to its character, reputation within the industry, and the goodwill it has developed over many years as well as loss of earning capacity and loss of past and future income. IEE's false statements were a substantial factor in causing GPS's harm.

**COUNT V – Violation of California Business & Professions Code Section 17200 (Cal. Bus. & Profs. Code § 17200 *et seq*.)**

93. GPS incorporates the preceding paragraphs of this Complaint by reference as if fully set forth here.

94. California's Unfair Competition Law, Cal. Bus. & Profs. Code § 17200 *et seq.* (the "UCL"), defines unfair competition to include any "unlawful, unfair, or fraudulent" business act or practice. The UCL also provides for injunctive relief, restitution, and disgorgement of profits for violations.

95. IEE engaged in "unlawful" business practices under the UCL based on the violation of 15 U.S.C. § 1125(a), Cal. Civ. Code § 45 *et seq*., and Cal. Civ. Code § 46 *et seq*. alleged above.

96. IEE engaged in "unfair" business practices under the UCL because its conduct was

substantially harmful to consumers and lacked any legitimate utility.

97. GPS was injured in fact and lost money or property as a result of IEE's violations of the UCL as alleged herein and GPS seeks the relief as set forth below for restitution in an amount to be determined according to proof, disgorgement of profits, and injunctive relief.

## JURY DEMAND

Plaintiff Global Plasma Solutions, Inc. hereby demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

Plaintiffs Global Plasma Solutions, Inc. requests the following relief:

a. a preliminary and permanent injunction restraining IEE, along with its officers, agents, servants, employees, and attorneys, from making, publishing, or otherwise distributing false, misleading, defamatory, or disparaging statements about GPS or any of GPS's products;

b. an order enjoining IEE under Cal. Bus. & Profs. Code § 17203:

    1. To cease such acts and practices declared by this Court to be an unlawful, fraudulent, or unfair business act or practice, a violation of laws, statute, or regulations, or constituting unfair competition;

    2. To disgorge all profits and compensation improperly obtained by IEE s a result of such acts and practices declared by this Court to be an unlawful, fraudulent, or unfair business act or practice, a violation of laws, statutes, or regulations, or constitution unfair competition.

c. an award of IEE's profits and GPS's damages;

d. an award in an amount that will enable GPS to engage in corrective advertising at a level that will effectively counter IEE's unlawful activity;

e. an award of GPS's reasonable attorneys' fees and the costs of this action;

f. presumed damages as allowed by law;

g. special, actual, and punitive damages in a sum to be determined by the trier of fact;

h. pre- and post-judgment interest as allowed by law;

i. an order requiring IEE to retract its false statements and engage in corrective advertising; and

1       j.    such other and further relief to which GPS may be entitled.

DATED: April 21, 2021          MCGUIREWOODS LLP

                                          By:  */s/ Alexander J. Gershen*
                                                  Alexander J. Gershen
                                                  Attorneys for Global Plasma Solutions, Inc.