**McGuireWoods LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
Phone: 804.775.1000
Fax: 804.775.1061
www.mcguirewoods.com

**Lucy Jewett Wheatley**
Direct: 804.775.4320

# McGuireWoods

LWheatley@mcguirewoods.com
Fax: 804.698.2017

March 23, 2022

***VIA CM/ECF***
The Honorable Jeffrey S. White
United States District Court for the Northern District of California
Oakland Courthouse - Courtroom 5, 2nd Floor
1301 Clay Street
Oakland, California 94612

Re:     ***Global Plasma Solutions, Inc. v. IEE Indoor Environmental Engineering***,
        **Case No. 4:21-cv-02884-JSW**

Dear Judge White:

Plaintiff Global Plasma Solutions, Inc. ("GPS") and Defendant IEE Indoor Environmental Engineering ("IEE") (collectively, "the Parties") write to you pursuant to Civil Standing Order paragraph 7 regarding discovery disputes. Despite exchanging several letters and emails concerning this matter between November 5, 2021 and February 16, 2022 and meeting and conferring via telephone on December 17, 2021, the Parties were unable to resolve this dispute.

**Agreed Dispute Background**

On July 20, 2021, GPS propounded its first sets of Requests for Production (Nos. 1–36) (the "Requests") and Interrogatories (Nos. 1–9) to IEE; IEE served its objections and responses to the written discovery on September 2, 2021. On November 5, 2021, GPS sent a letter to IEE, raising concerns with IEE's objections and responses to Requests 2–5, 29, and 30 and Interrogatories 1–7 and 9.

On December 17, 2021, the Parties met and conferred regarding these issues. Unable to resolve them, the Parties continued to conference over email throughout the month of January and into February in an attempt to reach a resolution. The Parties resolved many of the initial issues GPS raised on November 5, 2021. However, the Parties are at an impasse regarding three remaining points: IEE has refused to (1) produce documents responsive to Requests 3 and 4, which seek documents "sufficient to identify [IEE]'s customers in the last five years" and IEE's "accounting and financial statements, including statements of operation, profit and loss statements, income statements, balance sheets, statements of change in retained earnings, and internal management reports," respectively; and (2) conduct email searches using the names and entities listed in Request 34 as search terms.

March 23, 2022
Page 2

**GPS's Statement**

In light of the dispute background presented, GPS raises two issues with the Court. <u>*First*</u>, GPS respectfully requests that the Court compel IEE to produce documents responsive to Requests Nos. 3 and 4. As detailed more fully below, GPS has asserted claims under the Lanham Act as well as California libel and slander claims that entitle it to documents concerning IEE's customers and those relating to IEE's accounting and financial statements. <u>*Second*</u>, GPS's Request 34 seeks communications concerning GPS, its products, or ionization between IEE and 34 individuals and entities, 29 of which were listed on IEE's initial disclosures as IEE's potential witnesses. For the reasons that follow, GPS is entitled to this discovery and therefore respectfully requests that the Court compel IEE to perform targeted searches using these individual's and entities' names and produce any responsive, non-privileged documents.

***Requests 3 and 4.*** GPS's Requests 3 and 4 seek documents that identify IEE's customers from the past five years and its financial and accounting information, namely profits and lost statements, balance sheets, and other income statements (collectively, "financial documents"). IEE objected to these requests, claiming they "violated Defendant's right of privacy by seeking financial information and seeks protected trade secret and other confidential business information" and therefore refused to produce responsive documents. In its First Supplemental Responses to the requests, with respect to Request 3, IEE further improperly narrowed the request to a list of customers to whom "IEE has recommended a specific air filtration devise [sic]" to claim it had no responsive documents to produce. And with respect to Request 4, IEE stated that its financial documents fall into the "'zone of privacy' protected by the California Constitution, Article I, section 1" and refused to produce documents. Ex. B at 1–2. Later, in its Second Supplemental Response to Request 3, IEE reiterated its prior objections and elaborated that the Court "ruled in his Order on IEE's Anti-SLAPP motion" that "IEE is not a competitor of GPS" and therefore the request "is not relevant to any issues in the case." But IEE also conceded that it did "consulting work for certain governmental 'contractors' … in the past five years where it may have commented on air filtration devices" and referenced documents produced in connection with its work for the California Department of Public Health.

IEE's objections, attempts to narrow, and refusal to produce documents in response to Requests 3 and 4 are without merit for several reasons. At the outset, neither Request 3 nor Request 4 violates IEE's purported right to privacy. The California Constitution's zone of privacy protects against requests that seek irrelevant documents concerning a party's medical or sexual history or that seek other protected information from non-litigants. *See, e.g.*, *Vinson v. Superior Court*, 43 Cal.3d 833, 844 (1987); *Valley Bank of Nevada v. Superior Court*, 542 P.2d 977 (Cal. 1975) (protecting a bank from having to produce a third-party customer's financial information). Here, the Requests do not seek that information. Instead, they are narrowly tailored to seek the identification of IEE's customers as well as IEE's financial statements, such as profits and loss statements. This information is routinely sought and permitted during discovery in cases involving Lanham Act, slander, and libel causes of action, for at least the reasons that it is probative of not just IEE's intent, state of mind, and motive for its actions but also IEE's status as a competitor of GPS and profit disgorgement (which is available under at least the Lanham Act). IEE's withholding of any responsive documents as violating its purported "rights of privacy" is therefore

March 23, 2022
Page 3

without merit and must be overruled. *E.g.*, *Del Campo v. Am. Corrective Counseling Servs., Inc.*, No. 01-21151-JW, 2008 WL 4858502, at *4–*5 (N.D. Cal. Nov. 10, 2008) (citing *A. Farber and Partners, Inc. v. Garber*, 234 F.R.D 186, 190–91 (C.D. Cal. 2006)).

IEE's objections that it may withhold these documents on the basis that they contain trade secret and/or confidential business information likewise fails. The Parties agreed to, and the Court has entered, a stipulated Protective Order (ECF No. 45) in this case that expressly contemplates the production of trade secret and commercial information not publicly known. IEE is able to designate any information it contends is qualified as either Confidential or Highly Confidential – Attorneys' Eyes Only. This alone dispels IEE's reasons for withholding these categories of documents due to their commercially sensitive nature. Yet equally important is that, if IEE really believes it can show that production is improper despite the Protective Order (which it cannot), IEE would have moved for a protective order from the Court. IEE presumably did not do so, however, as such a motion would require IEE to show, "for each particular document it seeks to protect, . . . that specific prejudice or harm will result if no protective order is granted"—a standard IEE cannot meet. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003).

IEE's remaining arguments in its letters, emails, and supplemental responses concerning IEE's status as a competitor of GPS do not provide any justification for its refusal to produce documents for at least two reasons. First, IEE's reliance on the Court's Order on IEE's Anti-SLAPP motion to limit Request 3 to those customers to which "IEE recommended a specific air filtration device as part of its consulting business" is misplaced. As a threshold matter, the Court's Order makes clear that the anti-SLAPP analysis was inapplicable to GPS's Lanham Act claim. ECF No. 47 at 4. Thus, any finding regarding competitor status is outside the context of the Lanham Act claim. More importantly, the Court's analysis concerning whether IEE is a competitor of GPS is not binding on future proceedings in this case. Neither party moved for a determination of that issue. The Court also specifically notes that its determination was "based on the allegations in the complaint and the evidence in the record" in the context of the anti-SLAPP motion. *Id.* at 5–6. In other words, the Court's finding was preliminary and based on briefing and motion that IEE made ***before*** any discovery occurred. Thus, if IEE's argument were accepted and GPS was barred from discovery on whether IEE is a competitor of GPS based on the anti-SLAPP record, GPS would be fundamentally prejudiced. Consequently, any determination for purposes of the anti-SLAPP motion should not foreclose discovery relevant to whether the parties are competitors for purposes of trial.

Second (even setting aside the issue of whether IEE and GPS are competitors), GPS is nevertheless entitled to discovery of the identity of IEE's customers and its financial documents because both are probative of, at a minimum, IEE's intent, state of mind, and motive for making the disparaging statements as well as IEE's profits subject to disgorgement pursuant to GPS's Lanham Act claim. *E.g.*, *United Artists Corp. v. United Artist Studios LLC*, No. 2:19-cv-00828-MWF-MAAx, 2020 WL 5370615, at *3–5 (C.D. Cal. Apr. 27, 2020) (finding requests for production relating to financial information, including financial statements, balance sheets, income statements, profit and loss statements, accountant information, and tax returns were relevant to plaintiff's Lanham Act claims for disgorgement of profits and punitive damages); *SMD Software, Inc. v. EMove, Inc.*, No. 5:08-cv-403-FL, 2010 WL 11483356, at *2 (E.D.N.C. July 19, 2010) (finding customer lists and other customer information was relevant to lost sales as a result of

March 23, 2022
Page 4

defendant's misrepresentations and to defendant's profits); *see also Advantus, Corp. v. Sandpiper of Cal., Inc.*, No. 19cv1892-CAB(NLS), 2020 WL 6271028, at *4 (S.D. Cal. Oct. 26, 2020) (compelling defendant to produce financial information relating to revenue and costs as relevant to disgorgement of profits and establishment of willfulness relating to plaintiff's Lanham Act claim); *Garner v. Yarnall*, No. Civ. A. 03-4967, 2005 WL 834840, at *2 (E.D. Penn. Apr. 11, 2005) ("Defendants' financial information would obviously be relevant to a claim for disgorgement" in the context of a Lanham Act violation); *City of Newport v. Fact Concerts, Inc*., 453 U.S. 247, 270 (1981) ("[E]vidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded.").

Consequently, for any or all of the reasons above, IEE's refusal to produce documents in response to Requests 3 and 4 is improper; GPS respectfully requests the Court enter an order compelling IEE to produce documents in response to those Requests, without narrowing or restriction.

**Request 34.** Request 34 seeks "communications between Defendant and any of the following individuals or entities referring or relating to GPS, GPS's products, or ionization" and lists 34 relevant individuals and entities by name. Although IEE's Second Supplemental Response to Request 34 cites a narrow range of Bates numbers from its production, IEE admits it did not perform targeted searches for the 34 names and entities and refuses to do so. Instead, IEE searched for these documents using a mere 4 search terms that it unilaterally selected: "GPS," "needlepoint," "NPBI," and "snake."  This is insufficient, and IEE's bald statement that these targeted searches are "not proportional" to the needs of this case is belied by IEE's own disclosures.

To start, **29** of the 34 names GPS has asked IEE to search appear **on IEE's initial disclosures** as potential witnesses. By IEE's own admission, documents to and from these individuals and entities are relevant. This alone renders IEE's refusal to search for documents using these individuals' and entities' names unsupportable.

Moreover, IEE's primary objection to running targeted searches using these names (which can be done in a single search using connectors) is that the request is allegedly overly burdensome and may "return information entirely unrelated to the case." Importantly, however, IEE cannot know whether and how much irrelevant information will be returned because it has not conducted adequate searches to determine the number of hits or to identify the names producing any large number of hits. In fact, prior to raising this issue with the Court, GPS specifically asked IEE to run the search terms and provide the number of results so the parties could discuss whether there really is a burdensomeness issue. IEE refused that request. This is unreasonable, given that IEE has only a single custodian, any searching for these 34 terms could be done easily, inexpensively, and quickly to produce search term results listing the number of responsive documents for each term. IEE's refusal to take this basic step is indicative that its objection is without merit. GPS therefore respectfully requests that the Court order IEE to run searches using these names and produce any responsive, non-privileged documents.

March 23, 2022
Page 5

## IEE'S RESPONSE

***Request Nos. 3 and 4.***

Without sufficient justification, Plaintiff asks this Court to bless its attempt to embark on a fishing expedition and discover all IEE's clients and its financial records, without limitation, for the past five years. Such discovery is not directly relevant to Plaintiff's claims and, to the extent it is tangentially relevant, it is not justified, as it is not proportional to the needs of the case.

As this Court recognized on IEE's Anti-SLAPP motion, GPS and IEE are not competitors, as their business models and business goals are entirely different. (*See* Order of Nov. 19, 2021, excerpts at Attachment 1, at 4-5.) GPS *sells* air purification products to consumers; this lawsuit is about its sales of Needlepoint Bipolar Ionization ("NPBI") air purification technology. (Compl. ¶¶ 1-2.) IEE, on the other hand, as Plaintiff alleges in its complaint, is a "building science consulting firm" that provides customers with "diagnostic, consulting, and similar services designed to promote air quality in the consumers' desired space." (*Id*. ¶ 4; *see also* Declaration of Bud Offerman in support of IEE's Opposition to Motion to Compel, Attachment 3 ¶¶ 2-4.) The gravamen of GPS's complaint is that IEE made certain disparaging statements about GPS's NPBI products in a publicly circulated article and video, which allegedly disrupted GPS's business and led to the loss of customers. (Compl. ¶¶ 3, 6-7, 9, 39-40, 49-50.)

On IEE's Anti-SLAPP motion, the issue of whether the two entities are "competitors" was litigated as part of the question raised by GPS whether the "commercial speech" exemption applied. That exemption required that Plaintiff show, *inter alia*, that "the cause of action arises from a statement . . . by [Defendant] consisting of representations of fact about . . . *a business competitor's* business operations, goods, or services." (Attachment 1 at 4-5 (emphasis added).) GPS vigorously litigated the issue, dedicating multiple pages of their brief to it. Nevertheless, and apparently even *accepting Plaintiff's allegations in the complaint as true*, the Court determined "that GPS and IEE are not competitors under Section 425.17," because GPS "operates primarily as a purveyor of air purification products while IEE operates primarily as a consulting firm addressing air quality concerns" and "does not sell air purification devices." (*Id*. at 5-6.) Therefore, it is law of the case that GPS and IEE are not competitors. *See Genesis Ins. Co. v. Magma Design Automation, Inc*., 705 F.App'x 505, 506-07 (9th Cir. 2017) ("Under the law of the case doctrine, 'a court is generally precluded from reconsidering an issue previously decided [explicitly, or by necessary implication] by the same court, or a higher court in the identical case.'"). Notably, GPS has not amended its complaint allegations, nor does it raise any new argument or evidence that would alter the Court's conclusion on that issue. (*See, e.g*., Plaintiff's Response to Spec. Interrogatory Nos. 14, 15, excerpts at Attachment 2.) GPS now wants to go on a fishing expedition based on an issue that is no longer relevant in this case.

Request No. 3 is only justified if GPS and IEE are competitors. Otherwise, the only conceivable relevance would be if IEE recommended a specific air filtration device that competed with GPS's NPBI. IEE has conducted a diligent search for same and has verified it has nothing. Instead, IEE produced the closest thing is has, and which IEE

March 23, 2022
Page 6

concedes may have some relevance to the case: documents to identify its contract for services with the California Department of Health, which retained IEE to provide advice on ways to combat the COVID-19 virus, including the use of air filtration devices. IEE provided that advice, albeit without specifically mentioning GPS's products or recommending direct competitor products. IEE has no other information to provide regarding air filtration devices that it recommended that in any way competed with GPS's NPBI. GPS has failed to "connect the dots between" the identity of IEE's customers and clients and its allegations; in other words, it has failed to meet its burden to demonstrate the relevance of the information requested in Request No.3. *Youngevity Int'l, Corp. v. Smith*, No. 16-cv-704, 2017 U.S. Dist. LEXIS 176282, at *26 (S.D. Cal. Oct. 23, 2017).

With respect to Request No. 4's broad request for financial documents, IEE has produced all information to which GPS is entitled—that which is relevant to the issues in the case. The relevant issue is whether IEE received any profits *as a result of recommending a particular purification device that competes with GPS's products*. IEE conducted a search for any documents relating to this relevant question, and that search yielded nothing on point. Plaintiff's only justification for Request No. 4 is that financial records have been held to be relevant to punitive damages and "profits subject to disgorgement" pursuant to the Lanham Act. Even so, at a minimum, the request is, at best, premature. Plaintiff also objected to certain discovery requests relating to damages as premature. (*See, e.g.*, Plaintiff's response to Interrogatories 14 and 17, excerpts at Attachment 2 (objecting as premature).)

In any event, "[r]elevancy alone is no longer sufficient — discovery must also be proportional to the needs of the case." *In re Bard IVC Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016). The Court must consider not just relevance, but also (as pertinent here): (a) the importance of the issues at stake in the action, (b) the parties' relative access to information; (c) the parties' resources; (d) the importance of the discovery in resolving the issues; and (e) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. Rule 26(b)(1). "Under the federal rules, a district court has discretion to control the sequence of discovery 'for the parties' and witnesses' convenience and in the interests of justice[.]' Fed. R. Civ. P. 26(d)(3)." *Mengistu v. Forestview Apartments*, No. 2:19-cv-05118, 2020 U.S. Dist. LEXIS 260132, at *9 (C.D. Cal. June 5, 2020).

As noted, this Court has already determined that GPS and IEE are not competitors, undermining GPS's unfair competition and Lanham Act claims. Further, after extensive discovery, Plaintiff has failed to produce or identify any document or evidence that would demonstrate it suffered any "injury in fact," i.e., damages, as a result of IEE's allegedly disparaging comments. Thus, its Lanham Act and UCL claims are hanging by a thread. *See Muddy Waters, LLC v. Super. Ct.*, 62 Cal.App.5th 905, 922 (2021) ("[O]nly plaintiffs who have suffered actual damage may pursue a private UCL action. A private plaintiff must make a twofold showing: he or she must demonstrate injury in fact *and* a loss of money or property caused by unfair competition.")(quoting *Peterson v. Cellco Partnership*, 164 Cal.App.4th 1583, 1590 (2008)); see also *Appliance Recycling Ctrs. of Am., Inc. v. JACO Envtl., Inc.*, 378 F. App'x 652, 655 (9th Cir. 2010) ("Proof of actual injury is necessary to obtain damages under the Lanham Act . . . ."). This discovery is therefore not justified, as its importance is minimal.

March 23, 2022
Page 7

        Moreover, the burden is great in comparison—IEE's President, Bud Offerman, has already scoured through his emails and files for relevant information and produced everything he has related to the "Snake Oil" article, the primary subject of this case; as noted, he has also searched for relevant documents that might show that IEE is recommending specific products that compete with GPS's, but none exist. (*See* Attachment 3 ¶¶ 2-5.) To now require him to search his databases and reveal to GPS confidential information regarding IEE's clients is not warranted.  Even more, to require him to pull and produce every financial record related to IEE for the past five years will be a time-consuming and expensive effort that is simply not justified by the Plaintiff's conclusory, unsupported allegations of damages. (*See id.* ¶ 7.) *Gopher Media, LLC v. Spain*, No. 3:19-cv-02280-CAB-KSC, 2020 U.S. Dist. LEXIS 215002, at *12 (S.D. Cal. Nov. 17, 2020) (denying discovery as "not proportional to the needs of the case" upon finding that "the marginal (if any) relevance of the discovery is significantly outweighed by the effort that nonparties would need to expend to produce it.")

        In addition, consider the highly confidential, proprietary nature of the records (*see* Attachment 3 ¶¶ 6-7), which are subject to misuse by GPS, despite the existence of a protective order. Where, as here, both federal question and pendent state law claims are present, federal law on privilege, not state law, applies. *Agster v. Maricopa County*, 422 F.3d 836, 839 (9th Cir.), *cert. denied*, 546 U.S. 958 (2005). And federal courts ordinarily recognize a constitutionally-based right of privacy that can be raised in response to discovery requests. *Mengistu*, 2020 U.S. Dist. LEXIS 260132, at *8. Courts balance the need for the information sought against the privacy right asserted. *Id*. Here, where the relevance of the information is minimal and the Plaintiff's need for such information is questionable, IEE and its clients' privacy interests should carry great weight in favor of denying the motion to compel.

        In sum, neither Request No. 3 nor Request No. 4 are proportional to the needs of the case. *See Jones v. Nutiva, Inc.*, No. 16-cv-00711-HSG (KAW), 2016 U.S. Dist. LEXIS 140001, at *5-6 (N.D. Cal. Oct. 7, 2016) (finding request for company-wide financial statements overbroad and denying Plaintiff's request to compel same). Alternatively, Request No. 4 is premature and the issue should be revisited following summary judgment or trial on the merits, *if* the case survives and the issue of damages makes it to the forefront.

***Request No. 34***

        With respect to GPS's request that IEE search the numerous names listed in Request 34, this request, too, is simply not proportional to the needs of the case. The rules require IEE to search for documents and information relevant to the issues in the case. IEE has performed searches based upon *subject matter* search terms and has agreed to conduct a further search of the relevant *subject matter* search terms GPS proposed in February 2022. (*See* Attachment 3 ¶ 5.) *A search for all communications with various persons/entities will not yield any relevant information beyond those subject matter search terms*. Instead, it will return information entirely unrelated to the case, if anything, and will likely be a colossal waste of time. The additional searches of this nature are unwarranted, as the request is outside the boundaries of reasonableness.

March 23, 2022
Page 8

      IEE has already produced and identified documents responsive to Request 34. The burden of searching all of these names far outweighs Plaintiff's need for any further discovery in response to Request 34.


Sincerely,

*/s/ Lucy Jewett Wheatley*
Lucy Jewett Wheatley
Counsel for Plaintiff Global Plasma Solutions, Inc.

*/s/Kristin Mattiske-Nicholls*
Kristin Mattiske-Nichols
Counsel for Defendant IEE Indoor Environmental Engineering



Attachments
Cc:    Counsel of Record

# ATTACHMENT 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL PLASMA SOLUTIONS, INC., <br> Plaintiff, <br><br> v. <br><br> IEE INDOOR ENVIRONMENTAL ENGINEERING, <br> Defendant. | Case No.  21-cv-02884-JSW <br><br> **ORDER DENYING MOTION TO STRIKE COMPLAINT (ANTI-SLAPP)** <br><br> Re: Dkt. No. 30 |

Now before the Court for consideration is the motion to strike the complaint as a Strategic Lawsuit Against Public Participation ("SLAPP") brought pursuant to California Code of Civil Procedure section 425.16 ("Section 425.16") filed by Defendant IEE Indoor Environmental Engineering ("Defendant" or "IEE").  The Court has considered the parties' papers, relevant legal authority, and the record in the case, and it finds this matter suitable for disposition without oral argument.  *See* N.D. Civ. L.R. 7-1(b).  For the following reasons, the Court HEREBY DENIES Defendant's motion.

## BACKGROUND

Plaintiff Global Plasma Solutions, Inc. ("GPS") provides consumers with air purification products.  (Compl. ¶ 1.)  GPS invented Needlepoint Bipolar Ionization (NPBI) air purification technology.  (*Id*. ¶ 2.)  NPMI cleans the air by introducing ions in the space via airflow in the ventilation system and improves the air by reducing airborne particulate, odors, and pathogens.  (*Id*. ¶ 21.)

Defendant IEE advertises itself to consumers as a "a building science consulting firm" that provides customers with "diagnostic, consulting, and similar services designed to promote air quality in the consumers' desired space."  (*Id*. ¶ 4.)  On November 5, 2020, the president of IEE,

United States District Court
Northern District of California

1   services or in the course of delivering the person's goods or services; and (4) the intended

2   audience is an actual or potential buyer or customer, or a person likely to repeat the statement to,

3   or otherwise influence, an actual potential buyer or customer.  *Weiland Sliding Doors & Windows,*

4   *Inc. v. Panda Windows & Doors, LLC*, 814 F. Supp. 2d 1033, 1037 (S.D. Cal. 2011).  The burden

5   of proof as to the applicability of the commercial speech exemption falls on the party seeking the

6   benefit of it—here, GPS.  *Simpson Strong Tie Co. v. Gore*, 49 Cal. 4th 12, 26 (2010).  If the Court

7   finds the article is subject to the commercial speech exemption, the anti-SLAPP analysis ends; if

8   not, the Court will proceed with the Section 425.16 analysis.

9       With regard to the first factor, it is undisputed that IEE, which provides building science

10   consulting services, is primarily engaged in the business of selling services.  (*See* Dkt. No. 33-3,

11   Declaration of Charles Waddell ("Waddell Decl.") ¶ 39, Ex. U.)  The first factor is satisfied.

12       To satisfy the second factor, GPS must show that IEE's statements refer to its own product

13   or services or a competitor's operations, goods, or services.  Here, the challenged statements

14   concern GPS and GPS's products; the statements do not concern IEE's services.  Accordingly, to

15   satisfy the second factor, GPS must show that IEE and GPS are business competitors.  GPS

16   alleges that it operates in the "air purification/quality industry and provides[s] customers…with

17   accurate recommendations and products that meet each individual customer's air quality and

18   purification needs."  (Compl. ¶ 19.)  GPS alleges that IEE is a "building science consulting

19   firm…that provides customers with a variety of diagnostic, consulting, and similar services

20   designed to promote air quality in the consumers' desired space…"  (*Id*. ¶ 4.)  According to GPS,

21   the companies compete because GPS's products reduce the need for IEE's consulting services.

22   (Waddell Decl. ¶ 40.)  Customers concerned with the safety and effectiveness of GPS's products

23   will turn to IEE instead of GPS to meet their air purification needs.  (Compl. ¶ 46.)  However, IEE

24   contends that it is not a competitor of GPS because it does not manufacture or distribute air

25   cleaning devices, and it does not profit from recommending or endorsing air cleaning products.

26   (Dkt. No. 30-2, Declaration of Francis Offermann ("Offermann Decl.") ¶¶ 1. 20).

27       Neither party provides authority discussing the meaning of "competitor" in Section 425.17.

28   However, based on the allegations in the complaint and the evidence in the record, the Court finds

5

1   that GPS and IEE are not competitors under Section 425.17.  The record shows that GPS operates

2   primarily as a purveyor of air purification products while IEE operates primarily as a consulting

3   firm addressing air quality concerns.  IEE does not sell air purification devices.  Although GPS

4   attests that IEE is a competitor because GPS's products reduce the need for IEE's consulting

5   services, the record does not support this statement.  There is nothing in the record to support the

6   conclusion that the entities are rivals competing for the same customers.  Indeed, it appears that

7   the services might in fact complement one another—that is, a customer who purchases GPS

8   products might still engage IEE to diagnose certain air quality products and vice versa.

9   Accordingly, although both entities operate in the air quality and purification industry, they offer

10  different services within that broader industry.  GPS has failed to meet its burden to establish that

11  IEE is a business competitor as required under Section 425.17(c).

12        Because GPS has failed to show that IEE is a business competitor, the commercial speech

13  exemption does not apply, and the Court will not address the other two factors of the analysis.[1]

14  Accordingly, the Court will proceed to Section 425.16's two-step analysis.

**D.      Whether IEE's Statements are Protected Speech.**

16        "The first step in analyzing an anti-SLAPP motion is determining whether the defendant

17  successfully made 'an initial prima facie showing that the plaintiff's suit arises from an act in

18  furtherance of the defendant's rights of petition or free speech.'"  *Piping Rock Partners, Inc. v.*

19  *David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 967 (N.D. Cal. 2013) (quoting *Vess*, 317 F.3d at

20  1110) (further citations omitted).  The defendant's burden on this step "is not a particularly

21  demanding one."  *Daniel v. Wayans*, 8 Cal. App. 5th 367, 387 (2017).  A protected act includes

22  "any written or oral statement or writing made in a place open to the public or a public forum in

23  connection with an issue of public interest."  Cal. Code Civ. Proc. § 425.16(e).  IEE asserts that

24  the challenged statements are protected under Section 425.16(e)(3), which protects statements

25  "made in a place open to the public or a public forum in connection with an issue of public

---

[1] GPS objects to evidence in Mr. Offermann's reply declaration concerning the nature of IEE's services, which IEE offers to support its argument that IEE is not a competitor of GPS.  (*See* Dkt. No. 39, Objections to Reply Evidence at 4.)  However, the Court did not rely on this evidence in reaching its conclusion, and so it DENIES AS MOOT GPS's objection on this basis.

United States District Court
Northern District of California

# ATTACHMENT 2

1  **MCGUIREWOODS LLP**
   JENNY YI SBN #314540
2  Two Embarcadero Center
   Suite 1300
3  San Francisco, CA  94111-3821
   Telephone: 415-844-9944
4  Facsimile:  415-844-9922

5  **MCGUIREWOODS LLP**
   LUCY JEWETT WHEATLEY (*pro hac vice*)
6  AMANDA L. DEFORD (*pro hac vice*)
   800 East Canal Street
7  Richmond, VA 23219
   Tel: (804) 775-7877
8  Fax: (804) 698-2130
9  Email: lwheatley@mcguirewoods.com
           adeford@mcguirewoods.com
10

11  Attorneys for Global Plasma Solutions, Inc.

12

13                  UNITED STATES DISTRICT COURT

14      NORTHERN DISTRICT OF CALIFORNIA OAKLAND DIVISION

15

16  GLOBAL PLASMA SOLUTIONS, INC.,          CASE NO.

17              Plaintiff,                  **Case No.: 4:21-cv-02884-JSW**

18      vs.                                 **PLAINTIFF'S OBJECTOINS AND**
                                            **RESPONSES TO DEFENDANT'S**
19  IEE INDOOR ENVIRONMENTAL                **SPECIAL INTERROGATORIES TO**
    ENGINEERING,                            **PLAINTIFF GLOBAL PLASMA**
20                                          **SOLUTIONS, INC., SET ONE**
            Defendant.
21
                                            Action Filed: April 21, 2021
22                                          Trial Date: January 23, 2023

23                                          Assigned Judge: Hon. Jeffrey S. White

24

25  PROPOUNDING PARTY:     Defendant, IEE INDOOR ENVIRONMENTAL ENGINEERING

26  RESPONDING PARTY:      Plaintiff, GLOBAL PLASMA SOLUTIONS, INC.

27  SET NUMBER:            ONE (1)

28      Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Global Plasma

---

1

to this interrogatory. Pursuant to the Federal Rules, GPS therefore reserves the right to supplement this interrogatory response as additional information is discovered and/or additional harm and disruption is experienced.

Subject to and without waiving its general and specific objections, GPS responds as follows:

Pursuant to Rule 33(d), GPS is collecting and will be producing documents and other information that provides information responsive to this Request but cannot do so in time with this production because an appropriate protective order has not yet been entered. GPS will supplement its response with the Bates labels identifying those documents after an appropriate protective order is entered and those documents can be produced.

14. **Identify the existing and potential customers that declined to do business with GPS as a result of the statements in the article, as alleged in Paragraph 50 of the Complaint.**

**ANSWER:**

GPS incorporates its general objections as if set forth fully herein. GPS further objects to this interrogatory to the extent that it seeks information that is publicly available and/or equally accessible to Defendant. GPS further objects to this interrogatory to the extent it seeks information that is already within Defendant's possession, custody, or control. GPS further objects to this interrogatory to the extent it seeks information that is not within GPS's possession, custody, and control. GPS further objects to the interrogatory to the extent that it seeks commercially sensitive information and/or information that GPS is under an obligation to a third party to keep confidential. GPS will only provide this information subject to an appropriate protective order that will be entered in this case. GPS further objects to this interrogatory as premature. Discovery has just started in this case, and additional discovery into a variety of issues may provide additional information responsive to this interrogatory. Pursuant to the Federal Rules, GPS therefore reserves the right to supplement this interrogatory response as additional information is discovered and/or additional harm and disruption is experienced.

Subject to and without waiving its general and specific objections, GPS responds as follows:

Pursuant to Rule 33(d), GPS is collecting and will be producing documents and other information that provides information responsive to this Request but cannot do so in time with this

production because an appropriate protective order has not yet been entered.  GPS will supplement its response with the Bates labels identifying those documents after an appropriate protective order is entered and those documents can be produced.

**15.     Identify the competitors who are using the statements in the article to convince customers to "stop doing or perusing business with GPS," as alleged in Paragraph 51 of the Complaint.**

**ANSWER:**

GPS incorporates its general objections as if set forth fully herein.  GPS further objects to this interrogatory to the extent that it seeks information that is publicly available and/or equally accessible to Defendant.  GPS further objects to this interrogatory to the extent it seeks information that is already within Defendant's possession, custody, or control.  GPS further objects to this interrogatory to the extent it seeks information that is not within GPS's possession, custody, and control.  GPS further objects to the interrogatory to the extent that it seeks commercially sensitive information and/or information that GPS is under an obligation to a third party to keep confidential. GPS will only provide this information subject to an appropriate protective order that will be entered in this case. GPS further objects to this interrogatory as premature. Discovery has just started in this case, and additional discovery into a variety of issues may provide additional information responsive to this interrogatory. Pursuant to the Federal Rules, GPS therefore reserves the right to supplement this interrogatory response as additional information is discovered and/or additional harm and disruption is experienced.

Subject to and without waiving its general and specific objections, GPS responds as follows:

Pursuant to Rule 33(d), GPS is collecting and will be producing documents and other information that provides information responsive to this Request but cannot do so in time with this production because an appropriate protective order has not yet been entered.  GPS will supplement its response with the Bates labels identifying those documents after an appropriate protective order is entered and those documents can be produced.

**16.     Identify the international industry presentations where the article has been discussed, as alleged in Paragraph 52 of the Complaint.**

21

**ANSWER:**

GPS incorporates its general objections as if set forth fully herein. GPS further objects to this interrogatory to the extent that it seeks information that is publicly available and/or equally accessible to Defendant. GPS further objects to this interrogatory to the extent it seeks information that is already within Defendant's possession, custody, or control. GPS further objects to this interrogatory to the extent it seeks information that is not within GPS's possession, custody, and control. GPS further objects to this interrogatory as premature. Discovery has just started in this case, and additional discovery into a variety of issues may provide additional information responsive to this interrogatory. Pursuant to the Federal Rules, GPS therefore reserves the right to supplement this interrogatory response as additional information is discovered.

Subject to and without waiving its general and specific objections, GPS responds as follows:

GPS is currently aware that portions of Defendant's Defamatory Piece were referenced and using during international ASHRAE presentations, including but not necessarily limited to one presented by Marwa Zaatari as well as a presentation to ASHRAE Ireland.

17. **Describe in detail the "tens of millions of dollars in damages" caused by "IEE's disparaging and defamatory statements" as alleged in Paragraph 53 of the Complaint.**

**ANSWER:**

GPS incorporates its general objections as if set forth fully herein. GPS further objects to this interrogatory to the extent that it seeks commercially sensitive information and/or information that GPS is under an obligation to a third party to keep confidential. GPS will only provide this information subject to an appropriate protective order that will be entered in this case. GPS further objects to this interrogatory as premature to the extent it seeks information that is the subject of expert discovery. GPS further objects to this interrogatory as duplicative of at least interrogatory nos. 1-16, as each of those interrogatories seek facts and information that relate to the significant and irreparable harm that Defendant has caused and continues to cause GPS.

Subject to and without waiving its general and specific objections, GPS responds as follows:

GPS incorporates its responses to interrogatory nos. 1-16 as if set forth fully here. GPS

# ATTACHMENT 3

1  Arif Virji, Esq. (SBN 130322)
   avirji@cmprlaw.com
2  Kristin A. Mattiske-Nicholls (SBN 288495)
   kmattiske@cmprlaw.com
3  CARLE, MACKIE, POWER & ROSS, LLP
   100 B Street, Suite 400
4  Santa Rosa, California 95401
   Telephone: (707) 526-4200
5  Facsimile: (707) 526-4707

6  Attorneys for Defendant
   IEE INDOOR ENVIRONMENTAL
7  ENGINEERING

8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10
                         OAKLAND DIVISION
11

12 | GLOBAL PLASMA SOLUTIONS, INC., | Case No.: 4:21-cv-02884-JSW |

13 |             Plaintiff, | **REPLY DECLARATION OF FRANCIS (BUD) J. OFFERMANN (MSME PE CIH) IN SUPPORT OF DEFENDANT IEE INDOOR ENVIRONMENTAL ENGINEERING'S OPPOSITION TO PLAINTIFF GLOBAL PLASMA SOLUTIONS, INC.'S MOTION TO COMPEL DISCOVERY** |

14 |             v. |

15 | IEE INDOOR ENVIRONMENTAL ENGINEERING, |

16 |             Defendant. |

17 |  | Date: |
   |  | Time: |
18 |  | Courtroom: |

19 |  | Action Filed:  April 21, 2021 |
   |  | Trial Date:     June 26, 2023 |
20
21 |  | Assigned Judge: Hon. Jeffrey S. White |

22      I, Francis (Bud) J. Offermann PE CIH, declare:

23      1.      I am the President of IEE Indoor Environmental Engineering ("IEE"), a San

24  Francisco based IAQ (indoor air quality) consulting firm. This declaration is based upon my

25  personal knowledge and if called to be a witness I could competently testify to the statements

26  herein.

27      2.      IEE is not a competitor of GPS.  IEE does not manufacture or distribute air

28  cleaning devices, nor does IEE profit from recommending or endorsing any air cleaning

**CARLE, MACKIE,**
**POWER & ROSS** LLP

1

products.

3.    In Charlie Waddell's declaration submitted on behalf of Plaintiff in the Anti-SLAPP motion, he asserted the real purpose of my opinion piece was to discourage the use of GPS air cleaning devices, since the operation of these devices will reduce the need for users to contract with IEE to provide indoor air quality diagnostic and mitigation services, and thus this makes IEE a "competitor" of GPS.  This allegation is patently false.  None of the IAQ services provided by IEE compete with any air cleaning technology, including GPS. For the reactive investigations IEE provides (i.e., those where occupants are experiencing irritation or illness while occupying a building), other than mold inspections, all of the inspections involve exposure to gas phase air contaminants (e.g., formaldehyde, other VOCs, carbon monoxide, etc.), and none involve particulate phase air contaminants, including airborne bacteria and virus.  This is an important distinction, as the GPS air cleaning devices are designed for control of airborne particles, including bacteria and virus, and all the laboratory test reports involve tests to demonstrate the devices' ability to reduce the concentrations of particles, including airborne bacteria and virus.   As a result, buildings have indoor air quality problems that are related to gas phase air contaminants, will not see these problems resolved by installing GPS device and will still need indoor air quality diagnostic and mitigation services provided by IEE.  If building owners do install GPS air cleaning devices, the use of these devices will not reduce the need for the kind of diagnostic and mitigation services IEE provides, which are targeted for air quality problems related to gas phase air contaminants, and not particle phase air contaminants, including bacteria and virus, that GPS devices are designed to control.

4.    The following is a description of the Indoor Air Quality (IAQ) services provided by IEE. As explained below, the work IEE performs for these services must be done regardless of any air cleaning technologies, including those of GPS. Moreover, any profit IEE makes for doing this work is unrelated to the presence or absence of GPS air cleaning devices.

IAQ Commissioning Tests.   IEE provides post-construction USGBC LEED IAQ

CARLE, MACKIE, POWER & ROSS LLP

2

CASE NO. 4:21-cv-02884-JSW    DECLARATION OF FRANCIS (BUD) J. OFFERMANN IN OPPOSITION TO
PLAINTIFF GLOBAL PLASMA SOLUTIONS, INC.'S MOTION TO COMPEL

Assessments for new or renovated buildings. These assessments include testing of the indoor air for contaminants including VOCs, formaldehyde, $PM_{2.5}$ and $PM_{10}$, carbon monoxide, and ozone. The construction companies/owners of these buildings are required to do this air testing for the LEED accreditation regardless of what types of air cleaning technologies are installed in the building, including those of GPS.

Worker Chemical Exposure Tests. IEE provides chemical exposure testing of workers for companies that have workers that are at risk for occupational exposure to chemicals. These tests measure the chemical exposures in the breathing zone of workers for the purpose of OSHA compliance. The employers are required to do this air testing to determine the level of worker protection required (e.g., respirators) regardless of what types of air cleaning technologies are installed in the building, including those of GPS.

Carbon Monoxide Poisoning Investigations. IEE provides diagnostic tests to determine the carbon monoxide emissions from combustion devices where carbon monoxide poisoning is suspected, and occupants have become ill or have died. The mitigation of the carbon monoxide emissions from combustion devices cannot be accomplished in any practical manner by installation of an air cleaning device, including those of GPS, and the only practical mitigation measure is to reduce the carbon monoxide emissions from the combustion device.

Mold Contamination Assessments and Mitigation Plans. IEE provides mold contamination assessments and mitigation plans for buildings suspected of having a mold contamination problem. None of these mold mitigation steps are rendered unneeded by the installation of an air cleaning device, including those of GPS. The building moisture problem needs to be fixed and the mold growth needs to be removed.

Odor Transport Diagnostics and Mitigation in High-Rise Residential Units. Odors can be transported between residential units in high-rise buildings. IEE uses diagnostic tests of inter-unit air pressures and measurements of the airflow rates from the exhaust scavenger fans are to prepare a mitigation plan to address these odor problems (e.g., adjustment of the airflow rates from the exhaust scavenger fans and sealing of air leakage pathways). None of

CARLE, MACKIE,
POWER & ROSS LLP

3

CASE NO. 4:21-CV-02884-JSW    DECLARATION OF FRANCIS (BUD) J. OFFERMANN IN OPPOSITION TO
PLAINTIFF GLOBAL PLASMA SOLUTIONS, INC.'S MOTION TO COMPEL

these odor mitigation steps are rendered unneeded by the installation of an air cleaning device, including those of GPS.

Diagnosing and Mitigating Chemical Emissions from Building Materials in Buildings.  IEE provides diagnostic and mitigation services for chemical emissions from building materials. These tests involve measuring the indoor contaminant concentrations in the building, which then provide the basis for a mitigation plan typically involving removal and/or sealing of the material to reduce the chemical emissions from the material into the indoor air. The mitigation of the gaseous chemical emissions from these building materials cannot be accomplished in any practical manner by installation of an air cleaning device, including those of GPS, and the only practical mitigation measure is to reduce the source of the chemical emissions from the product.

Chemical Emission Rate Testing.  IEE conducts laboratory measurements of the chemical emission rates emitted by building materials, furnishings, equipment, and consumer products for manufacturers and users of these products.    The data collected is then used to calculate the chemical emission rates from the product, which are then used to model the indoor air contaminant concentrations resulting from these chemical emissions and develop cost effective mitigation strategies.

Indoor Related Heat Stress.  The indoor air temperatures in high-rise residential buildings with large areas of exterior glass can result in the occupants experiencing significant adverse health effects related to heat stress. IEE uses temperature and humidity loggers to measure indoor and outdoor air temperatures along with measurements of ventilation and air conditioning to diagnose the source of the problem and prepare mitigation plan options.

5.  I have conducted a full search of both my electronic and paper records for relevant information related to this case and have given all such information to my attorneys to produce to the plaintiff.  In or about October 2021, I conducted a search of my emails using the following search terms: "snake," "GPS," "NPBI," and "Needlepoint."   Recently, I was asked by my attorney, Arif Virji, to search additional terms proposed by the Plaintiff's counsel.  I have agreed

CARLE, MACKIE,
POWER & ROSS LLP

4

CASE NO. 4:21-CV-02884-JSW     DECLARATION OF FRANCIS (BUD) J. OFFERMANN IN OPPOSITION TO
PLAINTIFF GLOBAL PLASMA SOLUTIONS, INC.'S MOTION TO COMPEL

1  to do that additional search, but have not yet had a chance, due to various work engagements,

2  some of which took me out of town.  I agree to work with my counsel to collect all electronic

3  documents in electronic form for production to the Plaintiff.

4       6.    I am informed that Plaintiff is seeking a list of all my customers during the past

5  five years.  This information as highly proprietary and confidential. Moreover, as I set forth in

6  detail above, the work IEE provides for its services does not "compete" with GPS and any

7  profit IEE makes for doing its work is unrelated to the presence or absence of GPS air

8  cleaning devices. Thus, IEE's clients are completely irrelevant to any claims in this lawsuit.

9       7.    I am informed that Plaintiff is also seeking all of IEE's financial records for a

10  five-year period, including statements of operation, profit and loss statements, income

11  statements, balance sheets, statements of change in retained earnings, and internal management

12  reports.  In addition to being highly confidential, this information is completely irrelevant to any

13  issues in this case as. The work IEE provides for its services does not "compete" with GPS

14  and any profit IEE makes for doing its work is unrelated to the presence or absence of GPS

15  air cleaning devices. Moreover, it would be an expensive and time-consuming effort to collect

16  all of these documents, which contain sensitive information about my business. I would not be

17  able to do it myself and I would need to pay my accountant to collect them for me, at over $200

18  per hour.

19       I declare under penalty of perjury under the laws of the United States of America that the

20  foregoing is true and correct.  Executed on March 22, 2022 at San Francisco, California.

21  

22  *F. J. Offermann*
              _____
              Francis J. Offermann

**CARLE, MACKIE, POWER & ROSS LLP**

5

CASE NO. 4:21-cv-02884-JSW   DECLARATION OF FRANCIS (BUD) J. OFFERMANN IN OPPOSITION TO PLAINTIFF GLOBAL PLASMA SOLUTIONS, INC.'S MOTION TO COMPEL

## **CERTIFICATE OF SERVICE**

I Jenny Yi, certified that on March 23, 2022, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System; thereby upon completion the ECF system automatically generated a "Notice of Electronic Filing" as service through CM/ECF to registered e-mail addresses of parties of record in the case



*/s/ Jenny Yi*

Jenny Yi